UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EDWARD POMPONIO et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-cv-10253-IT |
| TOWN OF ASHLAND, et al., | * | |
| | * | |
| Defendants. | * | |

<u>MEMORANDUM & ORDER</u>

February 5, 2016

I.      **<u>Introduction</u>**

Plaintiffs Edward Pomponio, a former employee of the Ashland Police Department, and

his wife, Paula Pomponio, allege that the moving Defendants, all employees of the Ashland

Police Department and members of the Ashland Police Association, harassed Pomponio, made

defamatory statements about both Plaintiffs in a union complaint, and engaged in a concerted

effort to have Edward Pomponio removed from the police department.  Plaintiffs allege

violations of 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, as well as claims for

intentional infliction of emotional distress, negligent infliction of emotional distress, defamation,

tortious interference with contractual relations, battery, and loss of consortium.

Presently before the court are two motions for judgment on the pleadings: one brought by

Defendants Richard Briggs, Gregory Fawkes, Robert MacQuarrie, Michael Dionne, and Allena

Downey, who are named in all of these counts,[1] and one brought by Defendants Christopher

_____

[1] Only Fawkes in named in the battery count.

Alberini and John Driscoll, who are named in some of the tort claims. [#23], [#26]. The moving

Defendants are a lieutenant (Richard Briggs), sergeants (Gregory Fawkes and Robert

MacQuarrie), a detective (John Driscoll) and officers (Christopher Alberini, Michael Dionne,

and Allena Downey) ("Defendants" or "Moving Defendants"). For the following reasons, the

motions are ALLOWED IN PART and DENIED IN PART.

## II.    Facts as Alleged in the First Amended Complaint

Edward Pomponio ("Pomponio") began as a patrol officer for the Ashland Police

Department in March 2008. First Am. Compl. ¶ 27. In 2008, Pomponio was disciplined for the

accidental discharge of his firearm. Id. ¶ 28. He alleges that immediately following that

discharge, and up to 2013, he was subjected to name calling, harassment, humiliation, emotional

and physical distress from Defendants Richard Briggs, Michael Dionne, Gregory Fawkes,

Christopher Alberini, Robert MacQuarrie, Luann Tomaso, and Allena Downey. Id. ¶ 29. He

asserts further that Briggs, Fawkes, Alberini, MacQuarrie, Dionne, Downey, Tomaso, and

Driscoll began calling him derogatory names, posting humiliating photographs around the

station, and altering a department shooting trophy, and that harassment regarding the shooting

continued up to 2013. Id. ¶¶ 30-31.

In December 2009, Pomponio filed a complaint against Downey for disrespectful conduct

and untruthfulness. Id. ¶ 33. Pomponio alleges that as a result of filing this complaint, he was

subjected to continuous harassment, humiliation, mental anguish and extreme emotional and

physical distress by Briggs, Fawkes, Alberini, MacQuarrie, Dionne, and Downey that continued

to 2013. Id. ¶ 34.

From 2008 to 2013, Pomponio filed several allegations of misconduct, including

allegations of criminal activity of co-workers. Id. ¶ 35. Pomponio alleges that as a result of

these complaints, he was subjected to harassment, ridicule, hostile work atmosphere, and name calling by many officers, including Briggs, Fawkes, Alberini, MacQuarrie, Dionne, Downey, and Tomaso that continued to 2013.  Id. ¶ 36.

From 2008 to 2013, Fawkes, Alberini, and MacQuarrie subjected Pomponio to intimidation, fear of physical harm, harassment, name calling, and ridicule regarding his religious beliefs.  Id. ¶¶ 86, 90.  Alberini placed devil worship materials on Pomponio's locker on multiple occasions between 2009 and 2013.  Id. ¶ 87.  The chief of police, Scott Rohmer, ordered Lieutenant Briggs to take corrective action but Briggs failed to do so.  Id. ¶ 89.

In October 2011, Pomponio was appointed as provisional sergeant.  Id. ¶¶ 40, 54. Alberini solicited officers to boycott Pomponio's swearing in ceremony, causing him harassment, humiliation, mental anguish, and extreme emotional and physical distress.  Id. ¶¶ 50-51, 64-65.  Town Manager Petrin told Police Chief Rohmer that Pomponio was not liked by the Ashland Police Association membership.  Id. ¶¶ 43, 57.  Petrin refused to promote Pomponio to permanent Sergeant, allegedly as a result of false information that had been provided by Briggs, Dionne, MacQuarrie, and Fawkes. Id. ¶¶ 43, 49, 57, 63.

In December 2011, Pomponio reported sexual misconduct allegedly occurring within the police department.  Id. ¶¶ 52, 66.  As a result of reporting the sexual misconduct, Pomponio was allegedly subjected to harassment, name calling, isolation, humiliation, mental anguish, and extreme emotional and physical distress by Briggs, Fawkes, Alberini, MacQuarrie, Dionne, and Tomaso that continued up to 2013.  Id. ¶ 68.

Fawkes, MacQuarrie, and Dionne subsequently filed a complaint (hereinafter the "Union Complaint") on behalf of members of the Ashland Police Association.  Id. ¶ 69; Union Compl. [2,3] Fawkes drafted the Union Complaint and ten officers signed it.  First Am. Compl. ¶¶ 75-76. Briggs, Fawkes, MacQuarrie, and Dionne provided the Union Complaint to Metrowest Daily News and the Union Complaint was subsequently published.  Id. ¶ 73.  Outside investigators later determined that the Union Complaint contained false and misrepresented facts and was "drafted in an effort to embarrass Pomponio and Chief Rohmer and force them to resign."  Id. ¶ 77.  In January 2012, following the filing of the Union Complaint, Fawkes and Dionne informed Chief Rohmer that the complaint against Chief Rohmer would be withdrawn if the investigation regarding the sexual misconduct were terminated.  Id. ¶ 78.

In February 2012, Pomponio reported to Chief Rohmer that several Ashland Police Officers had violated department rules and criminal laws and that certain investigation reports were removed.  Id. ¶¶ 103, 105.  As a result of this investigation, Pomponio allegedly was subjected repeated harassment, name calling, humiliation, mental anguish, and extreme emotional and physical distress from officers, including Briggs, Fawkes, MacQuarrie, Alberini and Dionne.  Id. ¶ 107.

---

[2] The Union Complaint is dated January 23, 2011, and Plaintiff alleges that the Union Complaint was filed in 2011.  First Am. Compl. ¶ 69; Defs., Briggs, Fawkes, MacQuarrie, Dionne, Downey's Mem. Law Supp. Mot. J. Pleadings Ex. A [#24-1]; Pls.' Mot. Opp'n Defs. Briggs, Fawkes, MacQuarrie, Dionne, Downey's Mot. J. Pleadings Ex. B, at 12-17 [#48-1].  It appears from further allegations regarding the response to the Union Complaint, however, that the 2011 date may be a typographical error in both documents.  See First Am. Compl. ¶ 78.

[3] Plaintiff alleges that the Union Complaint accused Paula Pomponio of bribing Rohmer "in an effort to buy Pomponio his position within the Ashland Police," First Am. Compl. ¶¶ 69-70, 75-76, but the Union Complaint, which Plaintiffs and Defendants have submitted to this court, does not mention nor refer to Paula Pomponio. Defs., Briggs, Fawkes, MacQuarrie, Dionne, Downey's Mem. Law Supp. Mot. J. Pleadings Ex. A [#24-1]; Pls.' Mot. Opp'n Defs. Briggs, Fawkes, MacQuarrie, Dionne, Downey's Mot. J. Pleadings Ex. B, at 12-17 [#48-1].

In March 2012, Pomponio attended a police association event to discuss a complaint filed against Fawkes.  Id. ¶ 108.  Fawkes approached Pomponio, who was reading that complaint, and forcefully removed it from Pomponio's hands.  Id. ¶ 109.  Pomponio filed a complaint regarding the alleged assault and battery, and, as a result, was subjected to continuing harassment, name calling, isolation, and ridicule from Briggs, Fawkes, Alberini, MacQuarrie and Dionne.  Id. ¶¶ 110, 111.

Fawkes and Dionne met with Ashland selectmen to attempt to convince them to remove Pomponio and Chief Rohmer from their positions.  Id. ¶ 115.  Fawkes told them that he, Dionne, and the Ashland Police Association had been working for nine months to oust Rohmer and Pomponio.  Id. ¶ 117.

On February 28, 2014, Pomponio was notified that he was subject to a disciplinary hearing for destruction of drug evidence occurring in 2011 and for untruthfulness.  Id. ¶ 125. Pomponio alleges that Defendants' conduct caused his 2014 termination, and that other officers did not face the same discipline for similar conduct.  Id. ¶¶ 126-27.

III.   **Discussion**

A.  Standard of Review

Where "a motion for judgment on the pleadings 'is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).'"  Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012).  In evaluating a motion to dismiss, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor."  Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).  To survive dismissal, a complaint must contain sufficient factual material "to 'state a

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

In deciding such a motion, a court is ordinarily limited to considering "only the complaint, documents attached to it, and documents expressly incorporated into it." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014). When, however, "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663.

### A.   Claims Brought by Plaintiff Paula Pomponio

All of Paula Pomponio's claims, except for her loss of consortium claim, stem from the allegation that Defendants stated in the Union Complaint that Paula Pomponio bribed Chief Rohmer in an effort to buy Pomponio his position within the police department. First Am. Compl. ¶¶ 70-74. But the Union Complaint, attached to both the Defendants' motions and Plaintiffs' oppositions and properly considered by the court, does not name or even refer to Paula Pomponio at all. For that reason, Paula Pomponio has not stated claims for any of these counts and her claims, except for her loss of consortium claim, are dismissed.

B.  Claims as to Defendant John Driscoll

The complaint refers to Defendant John Driscoll only in passing and Plaintiffs conceded at argument on the instant motions that they did not state claims against him.  Accordingly, Driscoll's motion is allowed and the claims against Driscoll are dismissed.

C.  42 U.S.C. § 1983 (Count VIII) Claim Against Moving Defendants Briggs, Fawkes, MacQuarrie, Dionne, and Downey

To "state a claim under § 1983, a plaintiff must allege (1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law."  Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000). [4]  Plaintiffs allege interference with rights "secured by the federal Constitution including its First, Fourth, Fifth, and Fourteenth Amendments."  First Am. Compl. ¶ 177. Defendants assert that Plaintiffs have failed to provide specificity as to the alleged civil rights at stake, and Plaintiffs, in response, explain that the Moving Defendants allegedly interfered with Pomponio's free speech rights to report the sexual harassment of an officer.

Although, as a general matter, the "First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out," Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (internal quotation marks omitted), a "governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public."  Davignon v. Hodgson, 524 F.3d 91, 100 (1st Cir. 2008)

---

[4] "In distinguishing private action from state action, the general inquiry is whether 'a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or . . . is such that the actor could not have behaved in that way but for the authority of his office.'" Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (quoting Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)); Martinez, 54 F.3d at 987 ("Though on duty and in uniform, [defendant's] status as a police officer simply did not enter into his benighted harassment of his fellow officer.").  The parties do not address whether the First Amended Complaint alleges sufficient facts showing that the Moving Defendants were acting under color of state law, and accordingly, the court does not reach this issue.

(quoting <u>City of San Diego, Cal. v. Roe</u>, 543 U.S. 77, 80 (2004)).  The First Circuit has articulated a three-part inquiry to determine whether an adverse employment action against a public employee violates his First Amendment rights: (1) that he spoke as a citizen on a matter of public concern, (2) that his interest in commenting on these matters outweighed the defendant's interest in the efficient performance of its public service, and (3) that the protected expression was a substantial or motivating factor in the adverse employment action.  <u>Decotiis</u>, 635 F.3d at 29.  The first two factors are questions of law for the court while the third factor is ordinarily a question of fact for the jury.  <u>Davignon</u>, 524 F.3d at 100-01.

Under the first part of the <u>Decotiis</u> analysis, Pomponio must allege that his "speech touched upon a matter of public concern" and that he spoke as a citizen rather than as an employee.  <u>Decotiis</u>, 635 F.3d at 30; <u>see also</u> <u>Garcetti v. Caballos</u>, 547 U.S. 410, 418 (2006).  He has done so.

First, sexual harassment and other discriminatory misconduct within a police department are matters of public concern.  <u>See</u> <u>Baron v. Suffolk Cty. Sheriff's Dep't</u>, 402 F.3d 225, 233-34 (1st Cir. 2005) (concluding that matters of public concern include official malfeasance, abuse of office, and neglect of duties); <u>Azzaro v. Cty. of Allegheny</u>, 110 F.3d 968, 978-79 (3d Cir. 1997) (report of sexual harassment matter of public concern); <u>Thomas v. Town of Salisbury</u>, No. 14-13726, 2015 WL 5684074, at *5 (D. Mass. Sept. 28, 2015) (sexual harassment by acting police chief a matter of public concern).

Second, Pomponio plausibly alleges that he was speaking as a citizen.  When "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not" protect their communications.  <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 421 (2006).  However, "the mere fact that

a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." Lane v. Franks, 134 S. Ct. 2369, 2379 (2014) (concluding that fired employee's public testimony about information he learned through his employment was citizen speech). Instead, the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Id. While this issue may be disputed, the allegations are sufficient to survive a motion to dismiss.

Under the second part of the Decotiis analysis, the court observes whether Pomponio's interest in reporting alleged sexual harassment outweighed Defendants' interest in promoting the efficiency of the public services the police department performs. In other words, the "question is whether [Defendants] had an 'adequate justification for treating [Pomponio] differently from any member of the public. . . .'" Lane, 134 S. Ct. at 2380 (quoting Garcetti, 547 U.S. at 418). Taking all of Pomponio's allegations as true, Defendants can put forth no adequate justification for retaliating against an employee who reports sexual harassment. For purposes of these motions, Pomponio has shown that he engaged in constitutionally protected speech against which Defendants retaliated.

Defendants argue that, even if Pomponio has stated a claim for a constitutional violation, they are nevertheless protected by qualified immunity. Defendants only make a general claim of qualified immunity and do not direct their arguments to Pomponio's First Amendment claim; moreover, the record is not sufficiently developed at this stage to evaluate this claim. Accordingly, the court therefore does not find at the pleading stage that Defendants are entitled to qualified immunity. See Jordan v. Carter, 428 F.3d 67, 74-75 (1st Cir. 2005) (rejecting

qualified immunity where defendant put forth a "generic argument" in support of a motion to dismiss).  The motion for judgment on the pleading is denied as to Pomponio's Count VIII.

        D.   <u>State Law Claims</u>

           1.   <u>Anti-SLAPP Protection</u>

Defendants argue the Union Complaint constituted petitioning activity protected by the constitutions of the United States and the Commonwealth of Massachusetts, and that to the extent Plaintiffs' complaint is based on the Union Complaint, it is subject to dismissal under the Massachusetts anti-SLAPP statute, Mass. Gen. Laws ch. 231, § 59H.   Plaintiffs agree that the state statute "bars claims brought against a party because of that party's exercise of his right to petition" and do not dispute that their complaint is based in large part on the Union Complaint. They argue instead that the Union Complaint is not protected petitioning activity because defendants did not seek redress in their status as citizens.  Pls.' Mem. Law Supp. Opp'n Defs. Briggs, Fawkes, MacQuarrie, Dionne, Downey's Mot. J. Pleadings [#48] at 13.  According to Plaintiffs, because the Union Complaint begins "[w]e, as employees of the Ashland Police Department have learned of major acts of misconduct," Defendants were acting as employees and their speech is not protected.

As explained above, however, the "mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee— rather than citizen—speech." <u>Lane</u>, 134 S. Ct. at 2379 (concluding that fired employee's public testimony about information he learned through his employment was citizen speech).  Instead, the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." <u>Id.</u>  Here, Plaintiffs do not contend that the Union Complaint was made within the scope of the defendants' duties.

Nor can the court ignore Defendants' assertion of rights under the Massachusetts anti-SLAPP statute on the theory that the anti-SLAPP statute is a procedural rule that does not apply in federal court.  As the First Circuit explained in considering Maine's similar anti-SLAPP statute, the anti-SLAPP statute "is only addressed to special procedures for state claims based on a defendant's petitioning activities," and as to such claims, serves the "distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech."  Godin v. Schencks, 629 F.3d 79, 88-89 (1st Cir. 2010).  The statute includes substantive aspects, including shifting the burden to the plaintiff to defeat the special motion and determining the scope of the plaintiff's burden.  Id. at 89.  These same substantive aspects are found in Mass. Gen. Laws ch. 231, § 59H.  As the Supreme Judicial Court has explained, on such a special motion,

> the party seeking dismissal (the defendant) must demonstrate, through pleadings and affidavits, that the plaintiff's claims are based on "petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities."  If this showing is not made, the special motion must be denied.  If the showing is made, then the burden shifts to the nonmoving party (the plaintiff) to demonstrate, again by pleadings and affidavits, that the moving party's petitioning activities were "devoid of any reasonable factual support or any arguable basis in law" and the petitioning activities "caused actual injury to the responding party." G.L. c. 231, § 59H.  If these showings are made, by a preponderance of the evidence, then the special motion to dismiss must be denied.  If that standard is not met for one or both elements, the special motion to dismiss must be allowed.

Wenger v. Aceto, 883 N.E.2d 262, 266 (Mass. 2008) (internal citations omitted).

That said, Defendants have not presented their anti-SLAPP arguments by way of a special motion to dismiss.  If Defendants seek to have the court address this defense, they "may bring a special motion to dismiss" under the statute seeking to demonstrate that the plaintiff's claims are based on "petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities."  Mass. Gen. Laws ch. 231, § 59H.  Pomponio may defend against any such motion by rebutting Defendants' showing or, to the extent that the claims have

no substantial basis other than or in addition to petitioning activities, by demonstrating that

Defendants' activities were "devoid of any reasonable factual support or any arguable basis in

law" and the petitioning activities "caused actual injury" to Pomponio.  Id.

Accordingly, Defendants' arguments relating to Mass. Gen. Laws ch. 231, § 59H are

denied without prejudice to being raised in a special motion to dismiss.

> 2.    Massachusetts Civil Rights Act Claim (Count VII) Against Moving
>        Defendants Briggs, Fawkes, MacQuarrie, Dionne, and Downey

To state a claim under Mass. Gen. Laws ch. 12, § 11I, the Massachusetts Civil Rights Act

("MCRA"), Plaintiffs must allege that "(1) the exercise or enjoyment of some constitutional or

statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such

interference was by threats, intimidation, or coercion." Glovsky v. Roche Bros. Supermarkets,

Inc., 17 N.E.3d 1026, 1035 (Mass. 2014) (quoting Currier v. Nat'l Bd. of Med. Exam'rs, 965

N.E.2d 829, 837-38 (Mass. 2012)).  The MCRA and § 1983 are parallel statutes intended to

provide coextensive remedies.  See Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1131

(Mass. 1985).  Thus, like § 1983, the MCRA requires an actual deprivation of constitutional

rights.  Elwood v. Pina, 815 F.2d 173, 177-78 (1st Cir. 1987).  However, state action is not

required for the MCRA to apply, as the MCRA "reaches private conduct."  Nolan v. CN8, 656

F.3d 71, 76 (1st Cir. 2011).

Pomponio has sufficiently alleged the interference with his constitutional rights, so the

court considers whether he has alleged threats, intimidation, or coercion.  The additional

requirement of threats, intimidation, or coercion exists because the "Massachusetts legislature

intended that even a direct deprivation of a plaintiff's rights would not be actionable under the

act unless it were accomplished by means of one of these three constraining elements."  Nolan,

656 F.3d at 77 (internal quotation marks and citation omitted).  Whether conduct constitutes a

threat, intimidation, or coercion is determined by the court applying "the objective standard of a reasonable person . . . ." Meuser v. Fed. Express Corp., 564 F.3d 507, 520 (1st Cir. 2009) (citing Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006)).  "Threat" in this context involves "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; "'intimidation' involves 'putting in fear for the purpose of compelling or deterring conduct'; and 'coercion' is 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.'" Glovsky, 17 N.E.3d at 1035 (quoting Haufler, 845 N.E.3d at 335).

Pomponio does not sufficiently allege threats, intimidation, or coercion.  Pomponio asserts that the Union Complaint was "drafted in an effort to *embarrass*" Pomponio and Chief Rohmer and "force them to resign."  First Am. Compl. ¶ 77 (emphasis added).   This allegation does not involve intimidation, threats, or moral or physical force sufficient to support a claim under the MCRA.  See, e.g., Glovsky, 17 N.E.3d at 1036 (store manager informing signature gatherer that the supermarket had adopted a policy against signature solicitation does not amount to threats, intimidation, or coercion, where there was no threat of immediate arrest or forcible ejection); Planned Parenthood League of Mass., Inc.v. Blake, 631 N.E.2d 985, 990-91 (Mass. 1994) (lecturing, counselling, and picketing against abortion do not interfere with that right through threats, intimidation, or coercion).

Accordingly, the motion for judgment on the pleading as to Count VII is allowed.

     3.     Intentional Infliction of Emotional Distress (Count I) Against Moving Defendants Briggs, Fawkes, MacQuarrie, Dionne, and Downey

To establish a claim for intentional infliction of emotional distress, Plaintiffs must show "(1) that [Defendants] intended, knew, or should have known that [their] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused

emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014). To be "extreme and outrageous," conduct must go "beyond all possible bounds of decency" and be "regarded as atrocious, and utterly intolerable in a civilized community." Id. "The standard for making a claim of intentional infliction of emotional distress is very high . . . ." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). Outrageousness encompasses only a "high order of reckless ruthlessness or deliberate malevolence . . . ." Conway v. Smerling, 635 N.E.2d 268, 237 (Mass. App. Ct. 1994). The mere fact that a defendant has "acted with an intent which is tortious" is not sufficient to meet the "extreme and outrageous" standard. Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1987).

The instances of harassment that Plaintiffs allege in the First Amended Complaint do not amount to "extreme and outrageous" conduct. "Liability for extreme and outrageous conduct cannot be predicated upon mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities." Roman v. Trs. of Tufts Coll., 964 N.E.2d 331, 341 (Mass. 2012). The harassment alleged falls squarely into the ambit of insults and indignities, which are not as a matter of law extreme and outrageous.[5]

The filing of the Union Complaint, which allegedly contained lies about Pomponio in a concerted effort to have him leave the police department, may, at least at this stage, suffice to allege extreme and outrageous conduct. See Thomas, 2015 WL 5684074, at *13 (allegations of an "ongoing effort on the part of [defendant] to have [plaintiff] removed from the police force"

---

[5] Plaintiffs allege that Alberini placed devil worship materials on Plaintiff Pomponio's locker, First Am. Compl. ¶ 87, and explain in their opposition that "[t]he religion-based harassment that Plaintiff suffered . . . is considered to be an aggravating factor to the extreme and outrageous element required to support his intentional infliction of emotional distress claim." Pls.' Mot. Opp'n Defs. Briggs, Fawkes, MacQuarrie, Dionne, Downey's Mot. J. Pleadings at 7 n.4. The First Amended Complaint, however, does not include a claim as to Alberini for intentional infliction of emotional distress.

suffice to state extreme and outrageous conduct); <u>Merchand v. Town of Hamilton</u>, No. 09-10433-LTS, 2009 WL 3246607, at *1, *9 (D. Mass. Oct. 5, 2009) (intentional infliction claim stated where allegations that co-worker police officers spread rumors that plaintiff police officer committed misconduct in order to discredit police chief, with whom plaintiff was closely associated); <u>see also</u> <u>Tech Plus, Inc. v. Ansel</u>, 793 N.E.2d 1256, 1268 (Mass. App. Ct. 2003) (defendant making statements that plaintiff was anti-Semitic and persecuted another because of his Jewish heritage could be extreme and outrageous).  Pomponio will face an uphill battle if he cannot muster evidence to support the truth of his allegations or the level of maliciousness allegedly displayed by Defendants.  <u>See</u> <u>Chakrabarti v. Cohen</u>, 31 F.3d 1, 6 (1st Cir. 1994) (affirming directed verdict on intentional infliction of emotional distress for defendants who "misstated facts concerning [plaintiff's] competence and conduct" in termination of plaintiff and therefore did not engage in conduct that was "extreme and outrageous"); <u>Conway</u>, 635 N.E.2d at 273 (investigation and reporting of suspected embezzlement not extreme and outrageous where "founded in reasonable apprehension based on objective facts" and handled "with comparative graciousness").  But, at this stage, the intentional infliction claim may proceed and the motions for judgment on the pleadings are denied as to Pomponio's Count I.

4.    <u>Negligent Infliction of Emotional Distress (Count II) Against All Moving Defendants</u>

Defendants move for judgment on the pleadings Count II on the ground that they are immune from negligence claims under the Massachusetts Tort Claims Act ("MTCA").  The MTCA prevents public employees from incurring liability for negligent conduct occurring within the scope of their employment.  <u>See</u> Mass. Gen. Laws ch. 258, § 2 ("[N]o such public employee . . . shall be liable for any injury . . . caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.").  When determining whether an employee

15

is acting within the scope of employment, the court is to look to the common law, which test instructs the court to consider whether the "act was in furtherance of the employer's work." Clickner v. City of Lowell, 663 N.E.2d 852, 855 (Mass. 1996).  "Factors to be considered include whether the conduct in question is of the kind the employee is hired to perform, whether it occurs within authorized time and space limits, and whether it is motivated, at least in part, by a purpose to serve the employer."  Id.

Taking the allegations in the First Amended Complaint as true, Defendants were not acting within the scope of their employment when they signed and disseminated the Union Complaint.[6]  Although Defendants identified themselves as employees of the Police Department in the Union Complaint, they were not engaging in conduct that they were hired to perform as police officers.  Additionally, they were allegedly motivated by a purpose to embarrass and injure Pomponio and Chief Rohmer, not to serve their employer.  First Am. Compl. ¶ 77.  The motions for judgment on the pleadings are therefore denied as to Pomponio's Count II.

5.   Defamation (Count IV) Against Defendants Briggs, Fawkes, MacQuarrie, Dionne and Downey

Plaintiffs allege that Defendants defamed Plaintiffs in the Union Complaint.  To state a claim for defamation under Massachusetts law, Plaintiffs must establish that Defendants published a statement about and concerning Plaintiffs, which was defamatory and false, and that Plaintiffs suffered economic loss (or that the claim is actionable without proof of economic loss). Stanton v. Metro Corp., 438 F.3d 119, 124 (1st Cir. 2006).  A statement is defamatory if it may be reasonably understood as "discrediting [Plaintiffs] in the minds of any considerable and

---

[6] Plaintiffs' opposition limits the negligent infliction of emotional distress count to the writing, signing, and dissemination of the Union Complaint.  The court will therefore do so as well.

respectable class of the community."  Disend v. Meadowbrook Sch., 604 N.E.2d 54, 55 (Mass. App. Ct. 1992).

Accepting for purposes of this motion Pomponio's claim that the statements in the Union Complaint were false, made with malice and caused in part his termination, he has stated a claim for defamation.  Defendants published in the Union Complaint various statements about (and naming) Pomponio.  These statements, which accused Pomponio of physical assault, threatening to harm police officers' families, misusing police resources, spreading rumors of a sexual nature about a police officer, and pressuring that police officer to file a sexual harassment report, were defamatory because they would "hold the plaintiff up to scorn, hatred, ridicule or contempt . . . ." Stone v. Essex Cty. Newspapers, Inc., 330 N.E.2d 161, 165 (Mass. 1975); see also Union Compl. Accordingly, the motion for judgment on the pleading is denied as to Pomponio's Count IV.

6.     Tortious Interference (Count VI) Against All Moving Defendants

At the hearing on the instant motions, Plaintiffs conceded that they do not state a claim for tortious interference.  Accordingly, Count VI is dismissed.

7.     Loss of Consortium (Count IX) Against All Moving Defendants

The parties are correct that loss of consortium claims arise only from underlying torts. See Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994) ("As a general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury.").  Thus, where the underlying claim falls, the loss of consortium claim falls.  Because all claims that Paula Pomponio brought except for loss of consortium are dismissed, so is Pomponio's loss of consortium claim.  But, because this court is not dismissing all of Pomponio's underlying claims, the motions as to Paula Pomponio's loss of consortium claim are denied.

8.      Battery (Count X) Against Defendant Fawkes

Pomponio brings a battery claim against Defendant Fawkes for forcefully removing from Pomponio a sheet of paper, a complaint that was filed against Fawkes. First Am. Compl. ¶ 109. To state a claim for battery, Pomponio must show that Fawkes "intend[ed] to cause a harmful or offensive contact with the person of [Pomponio] or a third person, or an imminent apprehension of such contact, and . . . a harmful contact with the person of [Pomponio] directly or indirectly results." Waters v. Blackshear, 591 N.E.2d 184, 185 (Mass. 1992) (quoting Restatement (Second) of Torts § 13); see also Restatement (Second) of Torts § 18. Courts in various jurisdictions have held that offensive contact with an object attached to or identified with the plaintiff's body can constitute battery. See, e.g., Picard v. Barry Pontiac-Buick, Inc., 654 A.2d 690, 694 (R.I. 1995) (deciding that the intentional touching of the camera that plaintiff was using to take pictures of the defendant could constitute battery); Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627, 629-30 (Tex. 1967) (ruling that grabbing a plate from plaintiff's hand while making derogatory comment about plaintiff constituted battery). Pomponio will have to prove that Fawkes's actions amounted to an offensive contact battery to prevail on this claim. But, at this stage, Pomponio has stated a claim that Fawkes intended to harmfully or offensively touch an object associated with Pomponio's body. Cf. Workman v. United Fixtures Co., 116 F. Supp. 2d 885, 896-97 (W.D. Mich. 2000) (plaintiff did not show facts at *summary judgment* stage that grabbing paper from plaintiff's hand amounted to battery). Therefore, the motion for judgment on the pleadings as to Count XII is denied.

IV.      **Conclusion**

For the foregoing reasons, Richard Briggs, Gregory Fawkes, Robert MacQuarrie, Michael Dionne, and Allena Downey's Motion for Judgment on the Pleadings and Christopher

Alberini and John Driscoll's <u>Motion for Judgment on the Pleadings</u> are ALLOWED IN PART,

and DENIED IN PART.  All counts as to John Driscoll are DISMISSED.  As to the remaining

Moving Defendants, all counts brought by Paula Pomponio, except for Count IX (Loss of

Consortium), are DISMISSED.  As to the claims brought by Edward Pomponio, Count VI

(Tortious Interference), Count VII (Massachusetts Civil Rights Act), and Count IX (Loss of

Consortium) as to the remaining Moving Defendants are DISMISSED.

It is ordered that:

1.  The clerk is directed to terminate John Driscoll as a defendant.

2.  Parties shall file a Joint Status Report in light of this decision by the close of business

    February 10, 2016.

IT IS SO ORDERED.

February 5, 2016                                      /s/ Indira Talwani
                                                     United States District Judge